(C.D. 3458)

COMMONWEALTH TRADING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 29, 1968)

*Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Glenn E. Harris* and *Irving A. Mandel*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: Presented for the court's determination by the above enumerated protest is the question of the proper classification for customs duty purposes of certain Volkswagen rear axle stabilizers. Upon importation at the port of Los Angeles, said items of merchandise were classified by the customs authorities as articles or wares not specially provided for, composed wholly or in chief value of iron or steel, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and subjected to duty at the rate of 19 per centum ad valorem.

It is the contention of plaintiff herein that said articles should properly have been classified as parts of automobiles and assessed with duty at the rate of 8½ per centum ad valorem pursuant to the provisions of paragraph 369 of said tariff act, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649.

The specific language of the competing provisions reads as follows: Paragraph 397 of the Tariff Act of 1930, as modified, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*    \*    \*    \*    \*    \*    \*

     Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

       \*    \*    \*    \*    \*    \*    \*

       Not wholly or in chief value of tin or tin plate:
         Carriages, drays, \* \* \*.

       \*    \*    \*    \*    \*    \*    \*

         Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum except \* \* \*_____. 19% ad val.

Paragraph 369(a) of the Tariff Act of 1930, as modified, *supra*—

Automobile trucks \* \* \* _____ \* \* \*

Paragraph 369(b) of the Tariff Act of 1930, as modified *supra*—
All other automobiles, automobile chassis, and automobile bodies, all the foregoing, whether finished or unfinished\_\_\_\_ \* \* \*

Paragraph 369(c) of the Tariff Act of 1930, as modified *supra*—

Parts (except tires, inner tubes, motorcycle parts, and parts wholly or in chief value of glass) for any of the articles provided for in paragraph 369(a) or (b), Tariff Act of 1930, finished or unfinished, not specially provided for:                  \* \* \*
     Inner tubes \* \* \* _____
     Other _____ 8½% ad val.

The only witness called to testify was Henry J. Glynn, who appeared on behalf of plaintiff. Glynn identified himself as president of Commonwealth Trading Company, plaintiff herein, engaged in the import and export trade, dealing *inter alia* in auto parts and accessories.

In 1961, while in Australia during one of his business trips to the

Commonwealth nations of South Africa, Australia, and New Zealand, witness Glynn had brought to his attention a Volkswagen rear axle stabilizer by MacIsaac, general manager of VoMac Propriety, Limited, manufacturers of auto parts. Glynn obtained some samples and proceeded to market the item in the United States. He familiarized himself with the use of the article by having a stabilizer mounted on his own Volkswagen automobile.

A pictorial representation of the stabilizer in controversy was received in evidence as plaintiff's exhibit 1. The witness explained that the center of a stabilizer is attached to the crankcase of the Volkswagen engine and the two ends to the rear axle.

Exhibit 1 was designed to fit exclusively on a Volkswagen but is not standard equipment on such automobiles due to price considerations in this country, although Porsche automobiles produced by the Volkswagen company in Germany come equipped with a similar stabilizer. It was explained that both the Volkswagen and Porsche automobiles are unique in that they are rear-engine-driven type cars. Such cars, when stopped suddenly, tend to sway and overturn. A stabilizer counteracts this tendency.

From his experience in driving a Volkswagen without a stabilizer and with the advantage of driving one so equipped, Glynn stated that a stabilizer serves as a camber compensator, enabling the automobile to take the camber of the road, prevents the car from overturning at accelerated speeds, and improves the handling quality of the car in cornering and while traveling on bad or slanted roads.

The only evidence offered by defendant was a one-page printed sheet, referred to as a "brochure", entitled "Improve the Handling of Your Volkswagen with the 'PORSCHE' type Rear-Axle-Compensating-Spring". It was received as defendant's exhibit A and stresses the increased safety provided by the use of a stabilizer with a Volkswagen automobile.

The sole question for determination is whether or not the imported stabilizers are in fact and in law parts of Volkswagens in the tariff sense and, accordingly, subject to duty within the provision for parts of automobiles in paragraph 369(c) of the Tariff Act of 1930, as modified, *supra*.

Both parties in their briefs refer to a number of judicial pronouncements on the matter of what constitutes an article a part of another, all of which authorities have been given careful consideration. Considered to be particularly pertinent in a determination of the case at bar is *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849, wherein it was stated:

As pointed out by the court below, whether a given article constitutes a part of another article depends upon the nature of the so-

called part and, we might add, to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve.

The decided cases do not clearly establish any set rule or principle for determination of what constitutes parts of automobiles. The particular merchandise itself must be considered in order to make a determination as to whether the imported merchandise falls within the purview of the parts provisions herein involved of paragraph 369(c), as modified.

The *Gallagher & Ascher* case involved auxiliary heaters for use in Volkswagen automobiles. The testimonial record indicated that such a heater functioned independently of the automobile engine and produced heat whether or not the engine was running. It was disclosed further that—

* * * the conventional heater [with which the Volkswagen was equipped at the factory] did not provide sufficient heat to enable one to safely operate the vehicle in the area with which he was associated as a distributor of Volkswagens in the States of Illinois, Iowa, Wisconsin, Minnesota, North Dakota and South Dakota, and that in any cold climate the heater in controversy would be necessary for the safe operation of the vehicle, admitting however that the Volkswagen can and does operate without the heater in question and that it bore no relation to the starting and running of the car.

In reaching a decision in the *Gallagher & Ascher* case, *supra*, the court made reference *inter alia* to the cases of *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, wherein superchargers for Ford and Austin automobiles were held to be parts of automobiles for tariff purposes, and *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758, which held certain metal brackets which were imported and sold as separate items, their sole use being for mounting particular door closers on door frames, to be subject to classification for duty as parts of machines, and concluded as follows:

Here, as in *Pompeo*, the imported articles are dedicated to a sole specific use and "for no other use." Here, as in *Trans Atlantic Company*, the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. Here the record supports the view that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of its occupants and in aid of the indispensible safety factor of vision by assisting in the removal of ice from the windshield.

The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for

which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

Contra to a holding that the stabilizers in controversy are classifiable as parts of automobiles, the defendant, in its brief, points to the ease of installation of a stabilizer and the ease of its removal (although the record contains no specific testimony on the latter point) as a barrier to its classification as a part of an automobile. The court is of the opinion that said argument is untenable in view of prior decisions which have held that easily attached and removed articles like automobile horns and lamps were subject to classification for tariff purposes as parts of automobiles. Note *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434.

The rationale of decision in the *Gallagher & Ascher* case, *supra*, would appear to be dispositive of the present issue. As in the *Gallagher & Ascher* case, so too, here, the record discloses that the instant stabilizers were designed for sole use on Volkswagen automobiles; that said articles serve a useful function in that they enable the Volkswagen to which they are attached to take the camber of the road, and contribute to the safe and efficient operation of said automobiles by overcoming the tendency of automobiles not so equipped to overturn, and provide comfort to the vehicles' occupants by improving the handling and riding quality of the cars when cornering and on bad or slanted roads.

Upon the record before this court and after careful consideration of all the cases cited by the parties in their briefs, we are of the opinion that the stabilizers in issue should properly have been classified as parts of automobiles within the purview of paragraph 369 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, supplemented by Presidential Proclamation No. 3479, *supra*, and assessed with duty at the rate of 8½ per centum ad valorem as alleged by plaintiff. That claim in the protest is, therefore, sustained. All other claims are overruled.

Judgment will be entered accordingly.